**Phil TOVREA, Jr., Appellant,**

v.

**U. S. ALDERMAN, Appellee.**

**No. 18441.**

United States Court of Appeals
Ninth Circuit.

April 1, 1964.

Black, Kendall, Tremaine, Boothe & Higgins, Ferris F. Boothe, and Michael H. Schmeer, Portland, Or., for appellant.

Shuler, Sayre, Winfree & Rankin, Paul A. Sayre, and Robert L. Myers, Portland, Or., and Marsh, Marsh, Dashney & Cushing, and Francis E. Marsh, McMinnville, Or., for appellee.

Before CHAMBERS, HAMLIN and DUNIWAY, Circuit Judges.

CHAMBERS, Circuit Judge.

In this diversity case Alderman has retained a $50,000 deposit made by Tovrea on a proposed purchase of Alderman's farms in Oregon for $2,641,000. The transaction collapsed and Tovrea sued for his money back. The district court ruled in favor of Alderman. We affirm.

The sequence of events begins with a pure written option granted Tovrea by Alderman on July 2, 1959, for the $50,000 deposit. The option was superseded by an agreement on October 9, 1959, signed by both parties. In general form, the latter follows the lines of a contract of sale. But there is one critical paragraph, No. 13, inserted on Tovrea's insistence, reading as follows:

"In the event of a default by Tovrea in the consummation of this transaction, his liability shall be limited to the forfeiture of the Fifty Thousand Dollars ($50,000.00) down payment heretofore made to Alderman plus the payment of such additional damages as Alderman may have incurred on account of such default, not exceeding the additional sum of Two Hundred Thousand Dollars ($200,000.00)."

Alderman says the foregoing paragraph reduced the agreement to an option (because Tovrea was not obligated to perform) and it is no different in law than if there had been a $250,000 payment for an option. The district court agreed.

Apparently Tovrea would not or could not perform on the closing date of February 1, 1960. And perhaps his whole plan was to simultaneously resell the property on completion of the purchase. The time for closing was extended to May 1, 1960. Still the transaction was not closed.

Finally after a visit to Alderman in Oregon by Clyde Smith, a long time representative of Tovrea, Alderman's attorney on June 29, 1960, wrote Tovrea the extensions were cancelled and Alderman would stand on his rights, meaning (we suppose) he would keep the $50,000 deposit, although the attorney just said, "We cancel the extensions and stand on our rights." [1] There was some further interchange of correspondence between the parties and between their lawyers but no one changed his position after June

---

[1]. On the letter of June 29, 1960, standing on "his rights," Alderman's attorney said to Tovrea, inter alia, "Since you are unable to perform," etc. It is significant that the response by counsel of Tovrea really only expresses a hope of performance.

29, 1960. Alderman refused to return the deposit on Tovrea's demand and this suit was filed in May, 1961.

One trouble with appellant Tovrea's position is that too many findings of fact went against him. We cannot say the findings are clearly erroneous.

Appellee asserts (and the district court agreed) that under the law of Oregon if specific performance is not possible (e. g. precluded by the contract) then the agreement is merely an option.[2] And, if an option, a purchaser is generally entitled to no notice before forfeiture of a deposit after failure to perform. We think Alderman is probably correct that Oregon would apply its option rules to the agreement of October 9, 1959.

■ However, we choose to affirm on the ground that the district court's finding of abandonment of the contract by Tovrea is supported by substantial evidence. (The issue could have been found the other way.) This finding of abandonment comes out of the Smith visit to Alderman just before June 29, 1960. Tovrea questions violently Smith's authority. The district court could have found that Smith was only a small messenger boy, but in effect, the court found him to be Tovrea's "right hand" man. And there is evidence to support it.

■ It is obvious that Smith's primary mission to Alderman was to get Tovrea's $50,000 back. It seems wholly consistent with Smith's mission that he could announce that Tovrea could not perform and state the reasons why. Out of that, the court could find an abandonment of any intent to perform; thus, if notice of intent to forfeit was required before forfeiture, the abandonment waived the notice of forfeiture. Epplett v. Empire Investment Co., 99 Or. 553, 194 Pac. 461, would seem to be applicable.

Fifty thousand dollars is still a lot of money and much is said by appellant about equity abhorring forfeiture. The court upon a reasonable basis found the equities in favor of Alderman. It found that Tovrea gambled $50,000 (two per cent of the purchase price) on a quick turnover and failed.

We find no legitimate way to extricate the appellant from his loss. And, of course, Alderman may have had some losses out of the sequence of events.

The judgment is affirmed.

---

2.  See Scott v. Merrill's Estate, 74 Or. 568, 146 P. 99.